**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CHARLIE VERNON, JR.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No: 8:16-cv-756-T-30MAP
Crim. case No: 8:13-cr-115-T-30MAP

**ORDER**

THIS CAUSE comes before the Court on Petitioner Charlie Vernon Jr.'s Motion to Vacate, Set Aside, or Correct Sentence (CV Doc. 1), Respondent's response in opposition (CV Doc. 6) and Petitioner's reply (CV Doc. 14). Having reviewed these filings, the transcripts of the trial and sentencing proceedings (CR Docs. 118, 120–124), the record, and the relevant law, the Court concludes Petitioner's motion should be denied.

**BACKGROUND**

In January 2013, the Tampa Police Department ("TPD") received an anonymous tip that drugs were being trafficked at a residence that turned out to be Petitioner's mother's house. TPD set up surveillance and observed heavy pedestrian traffic at the residence. TPD then twice collected the trash outside the residence and found marijuana residue, cocaine residue, marijuana stems and blunts, and other items. TPD also found mail and food containers belonging to Petitioner during the trash pull.

Based on the anonymous tip and their observations, TPD obtained a search warrant. During execution of the warrant, TPD found Petitioner with roughly $2,000 on him near cocaine and a digital scale. After receiving *Miranda* warnings, TPD Officer Daniel Klotzbach claims Petitioner confessed to selling drugs and having four firearms. Petitioner admitted to having drugs for personal use and for a friend, but denied that he was aware of the guns.

In February 2013, Petitioner was indicted for possession of 28 grams or more of crack cocaine with intent to distribute (count I), possessing a firearm in furtherance of a drug trafficking crime (count II), and possession of a firearm by a felon (count III). Mr. Stephen Baer was then appointed as Petitioner's counsel. Mr. Baer moved to suppress the fruits of TPD's search and his confession based on a lack of probable cause. The trial court ruled the search warrant was supported by probable cause or, alternatively, that the good faith exception to the warrant requirement was satisfied.

Following the denial of Petitioner's motion to suppress, Mr. Mark Ciaravella appeared as Petitioner's new counsel. Mr. Ciaravella provided an affidavit stating Petitioner was unhappy with Mr. Baer because Mr. Baer was unable to get the evidence or Petitioner's confession suppressed, and because Mr. Baer was not able to obtain Petitioner's pretrial release. Petitioner continued to be unhappy that the Court did not suppress the evidence, despite Mr. Ciaravella's unequivocal explanation that the Court's ruling would not be overturned.

The case proceeded to a jury trial in October 2013. At trial, Petitioner argued he did not live at the residence and did not own the guns found by TPD. Petitioner took the stand and testified at trial about where he lived, the drugs, and the guns.

During jury deliberations, the jury informed the trial court that it reached a unanimous decision on two counts, but was having difficulty reaching a unanimous decision on the other count. After discussion with both counsel, the trial court gave the following modified *Allen* instruction to the jury:

> With regard, ladies and gentlemen, to your notice that you are unanimous on two counts and are having difficulty reaching a unanimous decision on one of the counts, I'm going to ask you to continue with your deliberations in an effort to agree upon a verdict so we can completely dispose of the case.
>
> This is an important case, needless to say. The trial has been expensive in time, the effort, money, and emotional strain on both the defense and the prosecution. If you fail to agree on a verdict with regard to that third count, the case will be left open and may have to be tried again. Obviously another trial would only increase the cost to both sides, and there's no reason to believe that the case can be tried again by either side any better or more exhaustively than it has before you. Any future jury would have to be selected in the same manner and from the same source as you were chosen. There's no reason to believe that the case could be submitted to 12 people more -- more impartial or more conscientious than you are.
>
> So, if a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one, since it appears to make no effective impression on the minds of the others.
>
> And if a majority or even the smaller number of you are in favor of an acquittal, the rest of you should ask yourselves again, and very thoughtfully, whether you should accept the weight and sufficiency of evidence that fails to convince your fellow jurors beyond a reasonable doubt.
>
> So, remember at all times, no juror is expected to give up an honest belief about the weight and the effect of the evidence; but after considering the evidence in the case, you must agree upon a verdict, if you can.

3

> If the evidence fails to establish guilt beyond a reasonable doubt, the defendant must have a unanimous verdict of not guilty.
>
> You should not be hurried in your deliberations and should take as much time as you feel necessary; but with regard to the question of time, we will not be permitted to go beyond 5:00 this evening; and if we do not reach a verdict by 5:00 this evening -- a unanimous verdict by 5:00 this evening, we will be obliged to continue the matter until Tuesday or Wednesday of next week.
>
> If you are unable to reach a verdict with regard to one of the counts, you may complete the verdict form with regard to the counts that you are able to arrive at a unanimous agreement on and indicate with regard to the count that you are not -- that you are not able to arrive at a unanimous agreement and notify Mr. Bohlig to bring in the verdict forms that you have completed.

(CR Doc. 123, pp. 81–83). Following the instruction, Mr. Ciaravella confirmed that the Court read the modified *Allen* charge, which the Court confirmed. Counsel were then asked if there was any additional information they wanted the Court to provide to the jury. Mr. Ciaravella did not ask for any additional information to be provided to the jury and did not object to the modified *Allen* charge.

Approximately twenty minutes later, the jury informed the Court that it reached a unanimous decision on all three counts. The jury convicted Petitioner of counts I and III, and acquitted Petitioner of the Count II charge of possessing a firearm in furtherance of a drug trafficking crime.

Petitioner was sentenced on January 6, 2014. During the proceeding, the sentencing court asked Petitioner if he had the opportunity to read and discuss the presentencing investigation report ("PSR") with his counsel, to which Petitioner responded that he had not. Mr. Ciaravella explained that he met with Petitioner to go through the PSR, but

Petitioner left the visitation room. The sentencing court afforded Petitioner an opportunity to review the PSR with his counsel. After a recess, Petitioner confirmed that the facts in the PSR were accurate. (CR Doc. 124, 6:17–19). Later during the sentencing hearing, Mr. Ciaravella admitted that Petitioner had four qualifying offenses for an Armed Career Criminal Act ("ACCA") enhancement. (CR Doc. 124, 13:22–25, 14:1–6). The PSR reflected the specifics of the separate qualifying offenses. (PSR, ¶¶ 37, 46, 49–50, and 52).

After hearing from Petitioner and the Government, the sentencing court sentenced Petitioner to 280 months on counts I and III, to run concurrently, followed by 8 years' supervised release on count I and 5 years' supervised release on count III, also ordered to run concurrently.

Following his conviction and sentence, Petitioner appealed and continued to be represented by Mr. Ciaravella. Petitioner raised only a single issue on appeal, namely that the trial court erred when it denied his motion to suppress. In his brief, Petitioner only argued that the trial court erred in concluding that the search warrant was supported by probable cause; Petitioner did not argue the trial court erred when it concluded, in the alternative, that the good faith exception applied. The Government filed a motion for summary affirmance based on Petitioner's failure to challenge the alternative basis for denying the motion to suppress. Mr. Ciaravella searched for cases and authority, and consulted with his colleagues, but was unable to craft a good faith argument challenging the trial court's conclusion that the evidence should not be suppressed based on the good faith exception. The Eleventh Circuit then affirmed the trial court's denial of the motion to suppress based on Petitioner's failure to argue the good faith exception did not apply.

## PETITIONER'S GROUNDS FOR RELIEF

On March 28, 2016, Petitioner filed this timely motion to vacate, set aside, or correct sentence. In his motion, Petitioner raised the following five grounds, which have been rephrased for clarity:

1. Appellate counsel was ineffective for failing to respond to the Government's motion for summary affirmance because counsel did not understand procedures governing direct appeals.

2. The sentencing court erred in sentencing Petitioner with the ACCA enhancement because the Government never proved Petitioner's qualifying offenses to a jury;

3. The trial court erred when it gave the modified *Allen* charge to the jury, and trial counsel was ineffective for failing to object to the instruction.

4. The trial court erred when it allowed trial to proceed despite Petitioner's medical condition, and trial counsel was ineffective for failing to bring the illness's effects to the trial court's attention.

5. Petitioner's sentence is a violation of the Eighth Amendment due to his medical condition.

## DISCUSSION

**I. Standard of Review**

Ineffective-assistance-of-counsel claims are cognizable under § 2255. *Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective-assistance-of-counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. *Strickland* requires proof of both deficient performance and consequent prejudice. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance'[;] the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Thus, Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

7

judgment." *Id.* at 691–92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**II. Analysis**

**Ground 1:   Ineffective assistance of appellate counsel**

Petitioner alleges appellate counsel, Mr. Ciaravella, rendered ineffective assistance because he was unfamiliar with appellate procedures and did not know he was required to challenge the trial court's alternative ruling on the motion to suppress. In his reply, Petitioner goes a step further and alleges appellate counsel was ineffective for failing to challenge the trial court's alternative ruling on the motion to suppress. Specifically, Petitioner wanted appellate counsel to argue that TPD lacked good faith in executing the warrant on the premises because he has evidence that it was not his house. Petitioner requests he be granted a new appeal to address this issue.

Petitioner is not entitled to relief and this ground must be denied. As a threshold issue, the Court notes that Plaintiff's claim does not amount to a forfeiture of an appeal itself, but rather is a claim that he was deprived a fair judicial proceeding. *Roe v. Flores–Ortega,* 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). As such, there is no presumption of prejudice and Petitioner must show his appeal would likely have merit. *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013).

Here, Petitioner can neither establish that Mr. Ciaravella's performance was deficient, nor that he was prejudiced. Mr. Ciaravella, contrary to Petitioner's allegations,

was aware he needed to respond to the Government's motion for summary affirmance in order to prevent the Eleventh Circuit from affirming the denial of the motion to suppress. Mr. Ciaravella researched to try to craft an argument to challenge the ruling that the good faith exception to the warrant requirement applied, and even consulted with colleagues about the issue. However, finding no basis on which to contest the ruling, Mr. Ciaravella made the decision not to pursue the issue. Because Petitioner has not rebutted Mr. Ciaravella's sworn affidavit establishing his actions were reasonable, Petitioner has failed to demonstrate that appellate counsel's performance was deficient.

Additionally, Petitioner has not shown prejudice because he has not raised an argument that would have merit on appeal. Petitioner's sole basis for having the Court's alternative ruling on the motion to suppress be overturned is that he did not own the residence that was searched. This argument, though, does not address whether TPD had a good faith basis to believe the search warrant was supported by probable cause. Put another way, TPD's good faith belief that the search warrant was valid does not turn on where Petitioner lived.

The Court also notes that if Petitioner did not reside at the searched premises as he claims, there is a very good chance that he would not have had standing to challenge the search at all. *United States v. Jones*, 184 F. App'x 943 (11th Cir. 2006) (explaining that a defendant who claimed not to reside at an apartment lacked a reasonable expectation of privacy in the premises and, therefore, lacked standing to suppress the evidence obtained from the search). As such, Petitioner has failed to show that he was in any way prejudiced

by Mr. Ciaravella's failure to raise such an argument on appeal. Accordingly, the motion is denied as to ground 1.

**Ground 2:     Sentencing error related to ACCA enhancement**

In this ground, Petitioner argues the sentencing court erred when it applied an ACCA enhancement based on the PSR. The focus of Petitioner's argument appears to be that the Government never proved to a jury that he had the qualifying convictions and that those convictions were separate incidents. According to Petitioner, this means the sentencing court erred when it sentenced him using the ACCA enhancement.

The Court concludes this ground also fails to state a basis for relief because Petitioner's challenge was procedurally defaulted when it was not raised on direct appeal. Generally, a defendant must raise a challenge to a criminal sentence on direct appeal or he is barred from raising it in a § 2255 proceeding. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). There are two exceptions to the procedural default rule:

> The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *See Lynn,* 365 F.3d at 1234. Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself.

*McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

Here, Petitioner attempts to argue that he is actually innocent. In his reply, he argues: "The failure to prove the elements of an ACCA violation 18 U.S.C. § 922(g)(1), 924(e)(2) results in actual innocence, which equates to factual innocence." (CV Doc. 14, p. 4).

10

However, Petitioner does not allege that he does not actually have the qualifying separate convictions, but instead argues the Government never proved the convictions to a jury, resulting in a presumption that he did not have the qualifying convictions (*i.e.*, the Government did not overcome his presumption of actual innocence).

Petitioner's argument misses the mark for many reasons. First, Petitioner is incorrect that the Government was forced to prove the existence of the qualifying convictions to a jury. *United States v. Weeks*, 711 F.3d 1255, 1259 (11th Cir. 2013) (explaining, "the government need not allege in its indictment or prove beyond a reasonable doubt that a defendant had prior convictions in order for a sentencing court to use those convictions for purposes of enhancing a sentence."). Second, courts are permitted to rely on the undisputed facts in a PSR where, as here, the facts in the PSR are undisputed. *United States v. Bennett,* 472 F.3d 825, 834 (11th Cir.2006) ("[T]he district court did not err in relying on the undisputed facts in Bennett's PS[R] to determine that his prior convictions were violent felonies under the ACCA and, therefore, that he was an armed career criminal."); *United States v. Wade,* 458 F.3d 1273, 1277 (11th Cir.2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PS[R] admits those facts for sentencing purposes."). Here, the PSR established that the qualifying offenses occurred on separate occasions. Finally, Petitioner admitted through counsel at the sentencing hearing that he had four qualifying convictions for the ACCA enhancement, which refutes Petitioner's argument that he is actually innocent. Accordingly, Petitioner's motion is denied as to ground 2.

**Ground 3:    Court error and ineffective assistance of counsel related to *Allen* charge**

Petitioner's third ground argues that the trial court erred when it gave a modified *Allen* charge to the jury. Petitioner does not seem to have an issue with the fact that the Court gave the *Allen* charge in general, but is focused on the portion in which the Court explained that the jury would have to return on Tuesday or Wednesday of the following week if a verdict was not reached by 5 p.m. when deliberations would end for the day. Petitioner argues that portion of the instruction was inherently coercive. Petitioner also states that counsel was ineffective for not objecting to that portion of the *Allen* charge.

Petitioner is not entitled to relief on this basis because the Court did not err and counsel was not deficient. When a defendant does not object to an *Allen* charge, a court's decision to give the instruction will not be reversed unless there is plain error. *United States v. Douglas*, 572 F. App'x 876, 877 (11th Cir. 2014). To determine whether there was plain error, courts should consider whether the *Allen* charge was inherently coercive. *Id.* The following factors are considered when determining whether an *Allen* charge was inherently coercive:

> (1) whether the charge instructed the jurors that they are not expected to give up their honest beliefs about the weight of the evidence; (2) whether the jury was polled before the charge was given; (3) whether the charge was given after a second notification from the jury that there was difficulty reaching a verdict; and (4) the amount of time between giving the charge and the announcement of the verdict.

*United States v. Jones*, 518 F. App'x 741, 743 (11th Cir. 2013) (citing *United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir. 2008)).

Here, the Court did not err by giving the modified *Allen* charge.[1] This case is similar to *Jones*, in which the Eleventh Circuit found an *Allen* charge was not inherently coercive. *Id.* There, as here, the jury reached a unanimous decision on all but one count after a few hours of deliberation. *Id.* at 742. The trial court told the jurors they were not expected to give up their honest beliefs and the jury was not polled. *Id.* at 742–43. There also, the court gave the *Allen* charge after just one statement from the jury that it was having trouble reaching a verdict. *Id.* at 743. Finally, the Eleventh Circuit concluded the fact that the jury returned a verdict 30 minutes after receiving the *Allen* charge did not change its decision. *Id.* (quoting *United States v. Chigbo,* 38 F.3d 543, 545–46 (11th Cir.1994)). Just as in *Jones*, the Court concludes the *Allen* charge given in this case was not inherently coercive, and, therefore, the trial court did not err.

This Court also notes that the reference to the jury coming back the following week was not coercive, but was rather simply informative. The trial court was letting the jury know they would not be kept past 5 p.m. for deliberations, and when deliberations were expected to resume. There was no threat that the jury would be kept in solitude for days unless they reached a verdict, or that the jury was required to return a unanimous verdict. *See United States v. Jones*, 504 F.3d 1218, 1219 (11th Cir. 2007) (explaining, "An instruction which appears to give a jury no choice but to return a verdict is impermissibly coercive.").

---

[1] Even if the *Allen* charge were inherently coercive, the Court concludes alternatively that Petitioner procedurally defaulted this issue by not raising it on direct appeal. *See Nguyen v. United States*, No. 1:04-CV-1019-CC, 2014 WL 6667098, at *17 (N.D. Ga. Nov. 24, 2014).

13

Because the trial Court did not err in giving the *Allen* charge, the Court also concludes trial counsel's failure to object to it does not rise to the level of deficient performance. Had Mr. Ciaravella objected to the *Allen* charge, the trial court would have overruled the objection. Thus, Mr. Ciaravella's consent to the *Allen* charge was not below the constitutionally-guaranteed level of performance.

Further, Mr. Ciaravella explained his sound strategy for not objecting to the *Allen* charge, which was not rebutted by Petitioner. Mr. Ciaravella explained that he hoped the *Allen* charge would cause the jury to reach a compromise verdict and find Petitioner not guilty of count II, which, in his opinion, was the only count on which they could have disagreed. (Doc. 6-4, ¶7). Petitioner's mere speculation that Mr. Ciaravella may have been mistaken is insufficient to meet Petitioner's burden of showing that the strategy was not sound. *Kimmelman*, 477 U.S. at 381. Accordingly, the Court concludes Petitioner's motion must be denied as to ground 3.

**Ground 4:   Court error and ineffective assistance of counsel related to Petitioner's medical condition**

Petitioner argues in ground 4 that his trial was unfair because he was unable to assist trial counsel due to his diabetes. Because of the symptoms, Petitioner argues that the trial court erred in not staying the proceedings until he was well enough to assist counsel, and that counsel was ineffective for not bringing the illness to the trial court's attention.

As to the claim that the trial court erred in not delaying the proceedings, the Court concludes Petitioner's argument fails. The record reflects the trial court was never told Petitioner's ability to assist his counsel was impaired. Rather, the trial court was informed:

14

> Oh, Your Honor, there was another subject. Mr. Vernon has a medical condition which requires him to regularly need to use the restroom and it is often a matter of urgency. So I just wanted the Court to be prepared for that. I would say it's more often than once per hour. In my experiences of being with him in the jail, it's more frequent than that, it's maybe every 45 minutes. As I said, when he has to go, it's pretty quick that he needs to.

(Doc. 118, 4:18–25, 5:1). Because the trial court was not aware Petitioner's medical condition affected his ability to assist counsel, it did not err when it allowed trial to proceed.

This Court also concludes Petitioner has not shown how he was prejudiced by trial counsel failing to inform the trial court of Petitioner's symptoms.[2] Petitioner's only argument with regard to prejudice is that the symptoms impaired his ability "to prove that the residence was not his and the items from the trash pull did not indicate the targeted apartment belonged to [Petitioner]." (Doc. 14, p. 6). Petitioner argues that him reviewing the evidence would have allowed him to explain why the search was in bad faith.

This argument, however, does not show that the result of the trial would have been different because Petitioner made that argument at trial and the jury rejected it.[3, 4]

---

[2] There is a dispute as to whether Mr. Ciaravella was informed Petitioner was experiencing these symptoms. (Docs. 1, p. 17; 6-4, ¶8; and 14, p. 6). The Court need not resolve that issue since it only bears on deficient conduct, not prejudice. *Strickland*, 466 U.S. at 697.

[3] The following citations to the trial transcript demonstrate this argument was amply made: **Doc. 121**, 22:14–23; 23:3–16; 130:16–25; 131:1–21; 132:3–8; 135:25–25; 136:1–10; **Doc. 122**, 82:4–21; 83:4–21; 84:7–22; 86:10–14; 96:5–25; 97:1–3; 101:5–17; 104:1–8; 114:25; 115:1–5; 118:13–23; 123:10–25; 124:1–6; 133:24–25; 134–143; 147:4–25; 148:1–9; **Doc. 123**, 32:8–25; 33:1–13.

[4] The Court also notes that there was sufficient evidence from which the jury could have reasonably concluded that Petitioner did reside at the property, such as finding mail addressed to Petitioner during one of the trash pulls, his driver's license listing the subject residence as Petitioner's residence, the TECO account for the residence being in Petitioner's name, Officer Klotzbach's testimony that Petitioner told him he moved into the residence, and Petitioner's sister's testimony that he lived at the residence.

Petitioner took the stand at trial and testified as follows on direct:

> Q: Mr. Vernon, on February 1st of this year, 2013, where were you living?
> A: Going back and forth from Nade house to my mom's house.
> Q: I'm sorry. You -- you might have to speak up a little bit there.
> A: Going back from Nade house, my lady, and my mom house.

(Doc. 122, 114:25 and 115:1–5). Petitioner's own testimony was that he lived at both the subject residence (his "mom's house") and his girlfriend's house when the search warrant was executed. This makes it far from probable that a jury would have been able to conclude that Petitioner did not live at the residence when it was searched regardless of whether trial counsel informed the trial court of Petitioner's medical condition. Finally, as explained above, Petitioner would not have had standing to argue the search was in bad faith if he did not reside there or otherwise admit sufficient ties to establish he had a reasonable expectation of privacy.

For all of these reasons, this Court concludes Petitioner has not demonstrated that there is a reasonable probability that the outcome of the trial would have been different if trial counsel had informed the trial court about Petitioner's medical condition. Therefore, the Court must deny the motion as to ground 4.

**Ground 5:   Sentence violates Eighth Amendment**

Petitioner's argues in his final ground that his sentence violates the Eighth Amendment due to the quality of healthcare in prison. Such a claim is not cognizable in a motion brought under § 2255. *Fernandez v. United States*, 941 F.2d 1488, 1494–95 (11th Cir. 1991); *Isacson v. United States*, No. 1:12-CR-40, 2013 WL 6097231, at *5–6 (N.D. Ga. Nov. 19, 2013). Accordingly, the Court must deny ground 5 of Petitioner's motion.

## **CONCLUSION**

Petitioner is not entitled to relief on any of the grounds argued in his § 2255 motion. Accordingly, and for the reasons stated above, the Court hereby denies Petitioner's motion.

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (CV Doc. 1) is DENIED.

2. The Clerk is directed to terminate any pending motions as moot and close this file.

3. The Clerk is further directed to terminate from pending status the motion to vacate found at Doc. 134 in the underlying criminal case, case number 8:13-cr-115-T-30MAP.

## **CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, this 18th day of November, 2016.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record